**2025 WI 13**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
CARL ROBERT SCHOLZ, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant,*

*v.*

CARL ROBERT SCHOLZ,
*Respondent.*

No. 2020AP1624-D

Decided April 18, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1 PER CURIAM. This case is before the court following the report of referee Charles H. Barr, recommending that Attorney Carl Robert Scholz's license to practice law in the State of Wisconsin be revoked from the date of the court's order, that he be ordered to pay $4,000 in restitution to S.L.C. pursuant to a stipulation of the parties, and that he pay the full costs of this disciplinary proceeding. Neither party has filed an appeal; thus, the court reviews this matter pursuant to Supreme Court Rule (SCR) 22.17(2).[1]

---

[1] SCR 22.17(2) provides:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional

1

## Summary

¶2     The Office of Lawyer Regulation (OLR) filed a 48-count, 113-page complaint against Attorney Carl Robert Scholz, alleging various counts of misconduct involving 19 different client matters. In short, Attorney Scholz maintained multiple bank accounts and routinely used his business accounts as a "slush fund" into which he deposited and then converted significant client funds. The allegations in the complaint include multiple counts of client trust fund conversion, trust account violations, failure to communicate, failure to provide information to clients, failure to provide a final accounting to clients, failure to return unearned fees, making material misrepresentations to legal tribunals, failure to cooperate with the OLR's investigation, making material misrepresentations to the OLR, failure to comply with court orders, failure to act with reasonable diligence and promptness, failure to provide notice of license suspension, and practicing law while his license was suspended. The OLR initially alleged that Attorney Scholz owed over $83,000.00 in restitution to former clients and other individuals.

¶3     We conclude that Attorney Scholz committed all instances of misconduct alleged in the complaint. We agree that Attorney Scholz's misconduct warrants revocation of his license to practice law in Wisconsin and that the revocation should not be made retroactive to a prior disciplinary suspension. We further agree that Attorney Scholz should pay the full costs of this proceeding, which total $10,905.68 as of May 30, 2024. As to restitution, while the court has concerns that OLR's decision to waive restitution as to several client matters does not comport with this court's recent jurisprudence concerning how restitution matters should be handled in instances where the amount of restitution is not reasonably ascertainable due to conduct of an attorney, we nonetheless adopt the parties' stipulation and order Attorney Scholz to pay $4,000 in restitution to S.L.C. However, we caution the OLR that in the future, any decision to waive claims of restitution must comport with the policy contained in the January 16, 2020 report issued by the OLR's Board of Administrative Oversight and reflected in cases such as *In re Disciplinary Proceedings Against Ruppelt*, 2017 WI 80, 377 Wis. 2d 441, 898 N.W.2d 473, and *In re Medical Incapacity Proceedings*

---

findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

*Against Muwonge*, 2017 WI 12, 373 Wis. 2d 173, 890 N.W.2d 575. That is, where the OLR determines that the amount of restitution is not reasonably ascertainable due to the conduct of an attorney, the burden shifts to the attorney to demonstrate what offset is appropriate in determining the amount of restitution. Moreover, we caution the OLR that in cases where a third party who is owed restitution intends to waive restitution, the OLR must provide a detailed explanation of the circumstances surrounding the waiver and why the OLR decided to accept it.

**Procedural History**

¶4 Attorney Scholz was admitted to the practice of law in Wisconsin on May 23, 1994. Attorney Scholz was the subject of prior discipline on two separate occasions. First, Attorney Scholz was privately reprimanded in 2011, after he deposited a client's advanced fee payment directly into his business account, without giving the requisite alternative fee notice, used the funds to pay a personal tax obligation, and transferred client funds from his trust account to his business account without giving notice to the client. Private Reprimand, No. 2011-21. Second, in 2020, this court imposed a two-year suspension on Attorney Scholz relating to his representation of A.B. in 2017, after he converted funds that were to be held in trust and engaged in various forms of misrepresentation to hide his misconduct. *In re Disciplinary Proceedings Against Scholz* (*Scholz I*), 2020 WI 84, ¶¶3, 5, 394 Wis. 2d 216, 950 N.W.2d 793. Following supplemental briefing, the court ultimately ordered payment of $59,146.66 in restitution. *See* S. Ct. Order, No. 2017AP2530-D (Feb. 24, 2021).

¶5 Additionally, on July 26, 2018, the court issued an order to show cause why Attorney Scholz's license should not be suspended based on the OLR's allegation that Attorney Scholz refused to cooperate with the OLR's investigation. After the show-cause order was issued, the court granted the OLR's request to withdraw its motion. *See* S. Ct. Order, No. 2018XX1131-D (Sept. 14, 2018). Attorney Scholz's license was again suspended on December 10, 2019, due to his noncooperation with the OLR's investigation in the present matter and was not reinstated until January 24, 2020. *See* S. Ct. Order, No. 2019XX1534-D (Dec. 12, 2019) and S. Ct. Order, No. 2019XX1534-D (Jan. 24, 2020).

¶6 On September 30, 2020, the OLR filed its underlying complaint in this matter. Attorney Scholz answered, and a referee was appointed. On May 23, 2022, the parties entered into a partial stipulation.

Under the partial stipulation, Attorney Scholz withdrew paragraphs 1-3 and 72-426 of his answer, and agreed that the referee could use the allegations in the complaint contained in those paragraphs as a factual basis for findings of misconduct as to Counts 8-48. He also stipulated that the appropriate level of discipline as to those counts was revocation of his Wisconsin law license. That stipulation left unresolved two issues: 1) the allegations relating to S.J.C. in paragraphs 4-71 of the complaint; and 2) the amount of restitution owed to the clients named in Counts 8-48 of the complaint. The partial stipulation represented that it was not the result of plea bargaining.

¶7      On January 31, 2023, shortly before the scheduled evidentiary hearing on the remaining counts, the parties entered into a second partial stipulation. Under the second partial stipulation, Attorney Scholz withdrew paragraphs 4-71 of his answer, relating to his representation of S.J.C., and entered no contest pleas as to those counts. Further, Attorney Scholz stipulated that he owed restitution to S.J.C. in the amount of $4,000. The second partial stipulation indicated that it was not the result of plea bargaining.

¶8      As a result of these two stipulations, the only unresolved issue was the amount of restitution Attorney Scholz owed to the individuals named in Counts 8-48 of OLR's complaint—that is, J.L.M., C.A-H.V., M.A.H., K.C. (as representative of R.G.M.'s estate), and L.M. A restitution hearing was scheduled for January 24-25, 2024. Shortly before the hearing, the parties apparently "resolved the remaining restitution issues"; however, no document to that effect was filed at that time. Nonetheless, despite initially requesting over $83,000.00 in restitution, the OLR appeared to agree that Attorney Scholz should be ordered to pay only $4,000 in restitution to S.J.C.

¶9      The parties thereafter litigated the issue of whether revocation of Attorney Scholz's license to practice law should be made retroactive to the termination of Attorney's Scholz's suspension in *Scholz I.* Attached to the OLR's briefing on that issue was an affidavit from OLR Investigator Emilie Kokie that partially addressed the issue of restitution. Investigator

Kokie later submitted a second affidavit, which was not filed by the OLR at that time, which further addressed the restitution issues.[2]

¶10    The referee filed his report on March 21, 2024, and filed a supplemental report on April 11, 2024. Due to the two partial stipulations, and Attorney Scholz's withdrawal of his answer to the complaint, the referee incorporated by reference the factual allegations of the complaint as his "Findings of Fact on the merits of this proceeding." The following is a summary of the relevant facts, as set forth in the complaint.

¶11    Attorney Scholz began practicing law in 1997 with the firm "Carl Robert Scholz, S.C." and later changed the name of the firm to "Estate Pro Wisconsin, S.C.," which he dissolved in 2019. Beginning in 2014, Attorney Scholz began offering legal services through various websites (including DivorcePro). He also owned and managed several other business entities, including real estate investment firms. In connection with these, Attorney Scholz maintained multiple IOLTA client trust accounts, an e-banking trust account, and a number of non-trust accounts in his own name and the names of various businesses in which he owned or maintained an interest.

Representation of S.J.C. (Counts 1-7)

¶12    Attorney Scholz represented S.J.C. in a divorce proceeding in 2017. S.J.C. paid an initial advanced fee of $3,500 to Attorney Scholz and Attorney Scholz later demanded a $4,000 payment from S.J.C. for purpose of retaining an expert psychologist in anticipation of an expected motion for psychological evaluation. S.J.C. made the $4,000 payment, and Scholz deposited the check into a bank account in the name of an investment property firm he owned. Attorney Scholz then used those funds to satisfy a tax obligation of another client and/or business partner. Attorney Scholz never hired the expert psychologist in S.J.C.'s divorce action and never paid the expert's $4,000 retainer. The parties in the divorce action reached a stipulation concerning child custody, placement, and support, and the

---

[2] Upon order of this court, the second Kokie affidavit and a further stipulation regarding restitution were filed by the parties, after the referee submitted his report and supplemental report.

court's order required S.J.C. to pay one-half of the guardian ad litem (GAL) fees.

¶13    The GAL sent an invoice for $3,950 to S.J.C., and Attorney Scholz issued a check in the amount of $1,000 in partial payment, the source of the funds being unknown. Shortly thereafter, S.J.C. met with Attorney Scholz and demanded an accounting of funds that had been paid to the GAL and documentation of payments. Attorney Scholz provided neither and considered his representation terminated at that point, but did not so advise S.J.C. or provide her with a final accounting. S.J.C. believed that Attorney Scholz continued to represent her in the post-divorce proceedings.

¶14    S.J.C. subsequently made numerous requests for information and documents relating to the divorce proceeding (the order discharging the GAL and her ex-husband's tax returns, among other items) from Attorney Scholz, as well as continued requests for an accounting of her funds, and specifically the $4,000 that she paid to Attorney Scholz to retain the psychologist. Attorney Scholz failed to provide these. Attorney Scholz eventually told S.J.C. that she had depleted her trust account funds and would need to sign a new representation agreement if she wanted him to continue; he also informed her that he did not have access to information to provide S.J.C. with a full accounting. S.J.C. demanded a refund of the $4,000 she had paid to retain the expert; Attorney Scholz instead provided a check for $500, which eventually bounced.

¶15    S.J.C. then filed an OLR grievance against Attorney Scholz, and Attorney Scholz refused to cooperate in the ensuing OLR investigation, leading the OLR to file a motion to show cause with this court under former SCR 22.03(4)(2018),[3] which it eventually dropped. In his subsequent

---

[3] Former SCR 22.03(4) (2018) provided, in pertinent part:

If the respondent fails to respond to the request for written response to an allegation of misconduct or fails to cooperate in other respects in an investigation, the director, or a special investigator acting under SCR 22.25, may file a motion with the supreme court requesting that the court order the respondent to show cause why his or her license to practice law should not be suspended for willful failure to respond or cooperate with the investigation. . . .

response to the investigation, Attorney Scholz misrepresented the nature of the $4,000 paid by S.J.C. and his communications with S.J.C. regarding that payment—claiming it was a combination advanced fee and costs payment.

¶16    As a result of these actions, the OLR alleged that Attorney Scholz violated the following rules of professional conduct: SCR 20:1.15(b)(1)[4] by failing to safeguard advanced costs paid by S.J.C. and by failing to hold those funds in trust, separate from his own funds (Count 1); SCR 20:8.4(c)[5] by converting money paid by S.J.C. (Count 2); SCR 20:1.4(a)(4)[6] by failing to respond to S.J.C.'s reasonable requests for information related to her case (Count 3); SCR 20:1.5(g)(2)[7] by failing to

---

[4] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[5] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[6] SCR 20:1.4(1)(4) provides: "A lawyer shall . . . promptly comply with reasonable requests by the client for information."

[7] SCR 20:1.5(g)(2) provides:

Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following:
    a. A final accounting, or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment.
    b. A refund of any unearned advanced fees and costs.
    c. Notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide 86 written notice of the dispute to the lawyer within 30 days of the mailing of the accounting.

provide a final accounting, return any unearned advances fees, and failing to provide required notices regarding fee disputes (Count 4); SCR 20:1.5(g)(2)(b) and 20:1.16(d)[8] by failing to promptly refund the unused $4,000 of advanced costs paid by S.J.C. upon the termination of his representation (Count 5); SCR 22.03(2),[9] enforceable via SCR 20:8.4(h),[10] by

---

d. Notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

[8] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[9] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the 160 director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[10] SCR 20:8(4)(h) provides: "It is professional misconduct for a lawyer to . . . fail to cooperate in the investigation of a grievance filed with the office of

failing to cooperate with the OLR and providing requested documentation only after the court issued a show-cause order (Count 6); and SCR 22.03(6),[11] also enforceable via SCR 20:8.4(h), by making material misrepresentations to the OLR regarding the nature of the $4,000 (Count 7). The OLR alleged that Attorney Scholz owed S.J.C. $4,000 in restitution.

### Representation of P.S.N. (Counts 8-14)

¶17    Attorney Scholz represented P.S.N. in a divorce in 2012, which involved the sale of a marital residence, in which both spouses held an undivided interest. Attorney Scholz received a check for $39,054.35, representing the proceeds of the sale, and deposited it into one of his business accounts. He thereafter converted the majority of those funds for his own use, the use of other clients, or other business interests. In June of 2012, P.S.N. and her husband reached a stipulation in the divorce proceeding that required Attorney Scholz to hold the entire sale proceeds in trust pending the final property distribution. Attorney Scholz prepared the stipulation and filed it, while failing to inform the parties or the court that he was not holding the funds in trust. Following the approval of the stipulation, Attorney Scholz converted the remainder of the sale proceeds.

¶18    P.S.N. signed a partial marital settlement agreement under which the parties agreed to each receive one half of the proceeds from the sale of their home. Under that agreement, Attorney Scholz was required to hold the funds in trust pending the final judgment of divorce. Attorney Scholz filed the settlement agreement and again failed to disclose that he was not holding the funds in trust. The day before the final divorce hearing, Attorney Scholz converted funds relating to his representation of another client to obtain a cashier's check for P.S.N.'s ex-husband's share of the home sale proceeds. During the final divorce hearing, Attorney Scholz

---

lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

[11] SCR 22.03(6) provides: "In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

misrepresented to the court that he was holding P.S.N.'s share of the sale proceeds in trust.

¶19     As a result of these actions, the OLR alleged that Attorney Scholz violated the following rules of professional conduct: former SCR 20:1.15(d)(3) (2016)[12] by failing to hold disputed funds in trust (Count 8); SCR 20:1.15(b)(1) by failing to hold client funds in trust (Count 9); SCR 20:8.4(c) by converting funds that were required to be held in trust (Count 10); SCR 20:8.4(c) by filing a document containing false information with the circuit court (Count 11); SCR 20:3.4(c)[13] by failing to comply with a court order requiring him to hold funds in trust until certain conditions were met (Count 12); SCR 20:3.3(a)(1)[14] by misrepresenting to the circuit court that he was holding the disputed funds in trust when he was not (Count 13); and SCR 20:8.4(c) by misrepresenting to P.S.N. that he was holding the disputed funds in trust (Count 14). No claim of restitution was made concerning P.S.N.

---

[12] Former SCR 20:1.15(d)(3), in effect through June 30, 2016, provided:

> When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved. Disputes between the lawyer and a client are subject to the provisions of sub. (g)(2).

[13] SCR 20:3.4(c) provides: "A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[14] SCR 20:3.3(a)(1) provides: "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

### Representation of N.M. (Counts 15-17)

¶20    Attorney Scholz represented N.M. in a child support enforcement action in 2013. N.M. wrote a check to Attorney Scholz's trust account in the amount of $1,684.48, which was intended to be paid to her former spouse. However, Attorney Scholz deposited the check into one of his business accounts and converted nearly one-third of the funds the following day to cover a shortfall in the account. A few days later, Attorney Scholz misrepresented to the court in the underlying case that he was holding the funds from N.M. in trust to be paid to her ex-spouse. After being ordered to disburse the funds to the ex-spouse, Attorney Scholz used money from the same business account to provide a check to N.M.'s ex-spouse.

¶21    During a subsequent hearing in 2014, the court appointed a GAL and ordered the parties to each pay a $1,000 deposit towards the GAL's fees. N.M. provided a check in that amount to Attorney Scholz, which he then deposited into an overdrawn business account. When Attorney Scholz issued a check from the business account to the clerk of court, there was insufficient funds to cover the check until Attorney Scholz transferred unrelated funds into the account.

¶22    As a result of these actions, the OLR alleged that Attorney Scholz violated the following rules of professional misconduct: SCR 20:1.15(b)(1) by failing to hold funds in trust belonging to N.M. or third parties (Count 15); SCR 20:8.4(c) by converting N.M.'s funds that were required to be held in trust (Count 16); and SCR 20:3.3(a)(1) by misrepresenting to the circuit court that he was holding funds in trust for N.M. when he was not (Count 17). No restitution was asserted relating to these counts.

### Representation of R.R. (Counts 18-19)

¶23    Attorney Scholz represented R.R. as the personal representative of the estate of M.A.R. in 2014. Attorney Scholz received a check in the amount of $60,000, representing the assets of the estate, which was supposed to be divided equally among its three beneficiaries. Attorney Scholz deposited the $60,000 in one of his business accounts and then converted the money to cover shortfalls in the account, pay himself, or pay third parties. Attorney Scholz then converted funds belonging to another client to obtain cashier's checks to the beneficiaries of M.A.R.'s estate.

¶24    OLR alleged that as a result of these acts, Attorney Scholz violated SCR 20:1.15(b)(1) by failing to hold the estate funds in trust (Count 18) and SCR 20:8.4(c) by converting the estate funds for his own benefit or that of third parties (Count 19). No claim of restitution was made in relation to these counts.

## Representation of S.H.M. (Counts 20-25)

¶25    Attorney Scholz represented S.H.M. in a divorce proceeding in 2014 involving J.L.M. and the couple's marital home. In February 2014, the court commissioner in the divorce proceeding entered a temporary stipulation and order that, among other things, required half of the proceeds of the sale of the marital home ($62,098.91) to be deposited into Attorney Scholz's trust account and authorized Attorney Scholz to release funds to pay certain debts, maintenance, and tax obligations. After depositing the check for $62,098.91 in his trust account, Attorney Scholz converted the bulk of the funds to cover the estate beneficiary payments in the R.R. matter discussed above. Attorney Scholz thus converted at least $59,900 of the proceeds from the sale of S.H.M. and J.L.M.'s marital home for purposes unrelated to his representation of S.H.M.

¶26    Additionally, Attorney Scholz used funds from one of his business accounts unrelated to his representation of S.H.M. to pay off S.H.M.'s credit cards. He also deposited a check for $5,250.78, representing the tax escrow credit due to S.H.M. and J.L.M., into his trust account and concealed his receipt of those funds from opposing counsel. Attorney Scholz then disbursed $6,000 from the S.H.M. trust account to himself.

¶27    In May 2014, Attorney Scholz deposited a check for $6,203 into one of his business accounts, representing S.H.M. and J.L.M.'s state and federal tax refunds from the previous year. He then used a portion of those funds to pay off another of S.H.M. and J.L.M.'s credit cards, despite the fact that the court order directed the credit cards to be paid from the proceeds of the couple's home. However, the check took several days to clear, as the business account was nearly depleted when the check was issued. Thereafter, Attorney Scholz disbursed checks from his trust account to S.H.M. and J.L.M., purportedly for their respective shares of the tax refunds. Later that month, Attorney Scholz deposited a check for $15,000 into his business account, which was a personal loan to S.H.M. from a third party. He then transferred $6,703 from his business account to his trust account. As of May 16, 2014, Attorney Scholz should have been holding

$42,250.96 in trust for S.H.M. and J.L.M., but was, in fact, holding nothing in trust for them.

¶28     In June of 2014, the parties filed a temporary stipulation to modify the terms of the February 2014 order, and thereafter filed a partial marital settlement agreement, allowing certain other disbursements to be made to settle the couple's financial affairs. Attorney Scholz withheld from the court and opposing counsel that he was no longer holding any funds in trust and that he had received the tax refund checks. In the ensuing months, Attorney Scholz made a number of disbursements from one of his business accounts using his own funds, or funds from other clients, to make certain required payments to S.H.M. and J.L.M. In September 2015, Attorney Scholz received a check from opposing counsel for $11,549.36, representing funds owed to S.H.M. Attorney Scholz deposited this check into one of his business accounts and converted the entire sum for the benefit of other clients, third parties, or himself. Attorney Scholz continued this same pattern of co-mingling funds and converting further trust funds through the finalization of the parties' divorce.

¶29     As a result of these actions, OLR alleged that Attorney Scholz violated the following rules of professional conduct: SCR 20.1.15(b)(1) by failing to hold money belonging to J.L.M, S.H.M., or third parties in trust (Count 20); SCR 20:8.4(c) by converting funds that were required to be held in trust to his own benefit or that of third parties (Count 21); former SCR 20:1.15(d)(3) (2016) by failing to hold disputed funds in trust (Count 22); SCR 20:8.4(c) by concealing from opposing counsel his receipt of $5,250.78 of disputed funds (Count 23); SCR 20:3.4(c) by failing to comply with court orders requiring him to hold funds in trust (Count 24); and SCR 20:8.4(c) by filing documents with the circuit court containing false information regarding whether he was holding funds in trust (Count 25). The OLR alleged that Attorney Scholz owed J.L.M. $2,625.39 in restitution.

## Representation of A.M.H. (Counts 26-27)

¶30     Attorney Scholz represented A.M.H. in a divorce proceeding in 2013. The parties entered into a marital settlement agreement governing disbursement of the proceeds of the sale of the marital home (after certain debts were paid), which required A.M.H. to make certain payments to her ex-husband. Attorney Scholz deposited various sums of money from A.M.H. intended for attorney fees and payments to her ex-husband into one of his business accounts. He also deposited a check for $20,729.12,

representing A.M.H.'s net share of the home sale proceeds, which, pursuant to the settlement agreement, could not be disbursed until certain debts were paid. Attorney Scholz did not hold these funds in trust, as required by the settlement agreement, and did not pay the listed debts from these funds. Instead, he converted the funds to his own use and used unrelated funds to pay the required debts.

¶31      As a result of these actions, the OLR alleged that Attorney Scholz violated SCR 20:1.15(b)(1) by failing to hold in trust funds belonging to A.M.H. or third parties (Count 26) and SCR 20:8.4(c) by converting funds that were required to be held in trust for his own use or that of third parties (Count 27). No restitution was claimed relating to these counts.

### Representation of C.A-H.V. (Counts 28-29)

¶32      Attorney Scholz represented C.A.-H.V. in a divorce proceeding in 2015. Attorney Scholz took checks written to his trust account and deposited them into one of his business accounts, converted the funds for his own use or that of third parties, and then used unrelated funds to make required payments. The converted funds in these counts involved payments C.A-H.V. sent to Attorney Scholz that were intended to pay the private school tuition for his children. While Attorney Scholz eventually made the payment, the initial check bounced and was returned unpaid. Attorney Scholz also deposited a $582 check from the circuit court into his business account, representing a refund from C.A-H.V.'s GAL deposit. Attorney Scholz converted the funds, paid C.A-H.V. only $291, and represented that the money was his ex-wife's share of the GAL deposit. Attorney Scholz never paid C.A-H.V. the remaining $291.

¶33      As a result of these actions, the OLR alleged that Attorney Scholz violated SCR 20:1.15(b)(1) by failing to hold required funds in trust (Count 28) and SCR 20:8.4(c) by converting funds required to be held in trust to his own use or that of third parties (Count 29). The OLR sought restitution in the amount of $291 to C.A-H.V.

### Representation of K.K. and D.S. (Counts 30-31)

¶34      Attorney Scholz's represented K.K. and D.S. involving the termination and distribution of a revocable trust during a circuit court proceeding in 2017. After the dispute resolved, Attorney Scholz received a check from the trust for $33,754.51, representing funds due to D.S. Attorney

Scholz deposited the funds into one of his business accounts and subsequently converted nearly all of D.S.'s funds. Attorney Scholz subsequently issued a check from his business account to D.S. in the amount of $33,754.51, but there were insufficient funds to cover the check, and Attorney Scholz needed to make additional deposits into the business account from other client trust-fund transfers and a personal loan to cover the check.

¶35    As a result of these actions, the OLR alleged that Attorney Scholz violated SCR 20:1.15(b)(1) by failing to hold funds belonging to D.S. in trust (Count 30) and SCR 20:8.4(c) by converting funds that were required to be held in trust for his own benefit or the benefit of third parties (Count 31). No claim of restitution was made relating to these counts.

## Representation of D.H. (Counts 32-33)

¶36    Attorney Scholz represented D.H. in a divorce proceeding against J.R. in 2017. In April 2017, the parties entered into a stipulation regarding child support owed by D.H. to J.R., which compromised the amount of child support arrears and required that certain funds be used for a college trust fund. Pursuant to the stipulation, D.H. issued a check to Attorney Scholz's trust account in June 2017 in the amount of $2,819.78. Attorney Scholz deposited the check into one of his business accounts and converted the funds. In September 2017, Attorney Scholz issued a check to D.H. in the amount of $1,175.28 for "Child Support Overpayments (Credit)" from his business account using unrelated funds. He issued a second check from the same account to J.R. in the amount of $1,056.86 for "Support Arrearages (Settlement in Full)" later that month; however, at the time the check was issued, there were insufficient funds in the business account to cover the check. Attorney Scholz thereafter deposited funds belonging to other clients/third parties into the business account to cover the check.

¶37    As a result of these actions, the OLR alleged that Attorney Scholz violated SCR 20:1.15(b)(1) by failing to hold funds belonging to D.H. in trust (Count 32) and SCR 20:8.4(c) by converting funds that were required to be held in trust for his own benefit or the benefit of third parties (Count 33). No claim of restitution was made relating to these counts.

IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY CARL ROBERT SCHOLZ
Per Curiam

### Representation of M.A.H. (Counts 34-35)

¶38    Attorney Scholz represented M.A.H. in a divorce action in 2015. In April 2017, M.A.H.'s former spouse wrote a check to Attorney Scholz's trust fund in the amount of $11,876.66 related to the divorce, but Attorney Scholz deposited that check in one of his business accounts, which at the time had a negative balance. Within the next few weeks, Attorney Scholz transferred all or substantially all of those funds to other accounts he owned or managed for purposes unrelated to his representation of M.A.H. Attorney Scholz thereafter replenished his business account with unrelated funds, before disbursing funds from the business account to M.A.H. During the OLR's resulting investigation, Attorney Scholz represented that he disbursed $7,000 to M.A.H.; however, he failed to provide any documentation to support that such payment was made and his bank account statements did not provide any evidence that such payment was made.

¶39    As a result of these actions, the OLR alleged that Attorney Scholz violated SCR 20:1.15(b)(1) by failing to hold funds belonging to M.A.H. in trust (Count 34) and SCR 20:8.4(c) by converting funds that were required to be held in trust for his own benefit or the benefit of third parties (Count 35). The OLR alleged that Attorney Scholz owed M.A.H. $7,000 in restitution.

### Representation of K.C. (Counts 36-37)

¶40    Attorney Scholz represented K.C., as personal representative of the estate of R.G.M., in a probate matter in 2017. In October 2017, Attorney Scholz deposited $7,546.83 in estate funds into one of his business accounts. Attorney Scholz did not make any disbursements of those funds to the estate or its beneficiaries. The next day, the account balance was only $3.43; a few weeks later, the account became overdrawn. In January 2018, Attorney Scholz deposited a check in the amount of $28,771.29 into a business account, representing the proceeds from the sale of the R.G.M.'s home. Attorney Scholz thereafter converted the funds, and within 15 days, the account balance was only $2.15. In May 2018, Attorney Scholz issued a check from a different account to K.C. for $7,000 as a "partial disbursement" using unrelated funds. On May 15, 2018, K.C. filed a claim against the estate for $12,780 for amounts expended on R.G.M.'s care before his death. During the OLR's investigation, Attorney Scholz failed to provide information or documentation to account for his handling of $36,315.97 of estate assets he

deposited into his business accounts and failed to explain the purpose of the $7,000 disbursement.

¶41    As a result of these actions, the OLR alleged that Attorney Scholz violated SCR 20:1.15(b)(1) by failing to hold funds belonging to the estate in trust (Count 36) and SCR 20:8.4(c) by converting funds that were required to be held in trust for his own benefit or the benefit of third parties (Count 37). The OLR alleged that Attorney Scholz owed the estate $29,315.97 in restitution.

## Representation of S.A.S. and L.M. (Counts 38-39)

¶42    Attorney Scholz represented S.A.S. in the drafting of her will and later L.M. in a probate proceeding regarding S.A.S.'s estate in 2017. In August 2017, L.M. wrote a check for $40,000 to Attorney Scholz's trust account representing advanced fees and costs to be used to cover costs of the estate. Attorney Scholz deposited the check into one of his business accounts. Attorney Scholz thereafter converted the funds for uses other than the estate; within the next month, the balance in the business account was only $188.18. Attorney Scholz failed to provide the OLR with documents or information necessary to determine whether he ever reimbursed the S.A.S. estate for the converted $40,000.

¶43    As a result of these actions, the OLR alleged that Attorney Scholz violated SCR 20:1.15(b)(1) by failing to hold funds belonging to the estate in trust (Count 38) and SCR 20:8.4(c) by converting funds that were required to be held in trust for his own benefit or the benefit of third parties (Count 39). The OLR alleged that Attorney Scholz owed L.M. $40,000 in restitution.

## Representation of R.R.N. (Counts 40-43)

¶44    Attorney Scholz represented R.R.N. in a 2017 support proceeding stemming from a 2005 child support order and levy obtained by the Racine County Child Support Agency (Agency) on R.R.N.'s bank accounts. Attorney Scholz made his notice of appearance on April 21, 2017, and thereafter met with representatives of the Agency, who informed him that R.R.N. owed nearly $15,000 in child support arrears and interest to the child's mother and over $10,000 to the state of Wisconsin relating to the public benefits paid to the child while in the care of a custodian. R.R.N. began making monthly payments to the child's mother.

¶45    In October 2017, R.R.N. wrote a check to Attorney Scholz for $10,379.60 for "WI Child Support Payout," intending the money to be used to satisfy his child support obligations to the child's mother, and stopped making monthly payments. Attorney Scholz told R.R.N. he would attempt to negotiate a settlement of less than that amount with the child's mother. Thereafter, Attorney Scholz deposited the check into one of his business accounts and converted the funds; within the month, the business account became overdrawn. Attorney Scholz informed R.R.N. that he was still attempting to negotiate a settlement and was making periodic payments on his behalf. During this time period, the Wisconsin Support Collection Trust Fund (WSCTF) notified R.R.N. of additional funds that were owed and threatened to garnish his wages and suspend his driver's license if the amounts were not paid. In March of 2018, Attorney Scholz disbursed $585 to WSCTF from a different business account to pay certain outstanding fees; these funds did not come from the funds that R.R.N. had paid, as those funds had been depleted. Attorney Scholz made no payments to the child's mother despite representing to R.R.N. that he was doing so.

¶46    Attorney Scholz filed a motion to modify child custody, placement, and support but then withdrew the motion. Attorney Scholz contacted the Agency in an effort to cease its enforcement actions against R.R.N. and proposed a payment plan. However, Attorney Scholz never provided the Agency with a written payment plan and did not make the proposed monthly payments on behalf of R.R.N.

¶47    In December 2018, the Agency filed a motion for contempt in the support proceeding. Attorney Scholz brought a check for $5,000 to the hearing, and was instructed to mail it to WSCTF. Attorney Scholz represented that he would do so the next day, but failed to do so. As of May 21, 2019, R.R.N.'s total outstanding debt due to child support arrears and interest grew to $32,000 due to lack of payments made by or on behalf of R.R.N. At the end of that month, Attorney Scholz mailed a check to WSCTF in the amount of $10,000, drawn from his DivorcePro account (which was not the account into which he had deposited R.R.N.'s funds). Following allocation of that check, R.R.N. still owed $11,442 to the child's mother and $10,984 to the State of Wisconsin

¶48    As a result of these actions, OLR alleged that Attorney Scholz violated the following rules of professional conduct: SCR 20:1.15(b)(1) by failing to hold funds belonging to R.N.N. or third parties in trust (Count 40); SCR 20:8.4(c) by converting funds that were required to be held in trust

IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY CARL ROBERT SCHOLZ
Per Curiam

for his own benefit or the benefit of third parties (Count 41); SCR 20:1.3[15] by failing to act with reasonable diligence and promptness to pursue a stipulation to reduce R.R.N.'s child support obligations or take other action to reduce the accumulation of additional arrears and penalties (Count 42); and SCR 20:8.4(c) by making misrepresentations to R.R.N. concerning the handling of his funds in the support proceeding (Count 43). No claim of restitution was made in connection with these counts.

<u>Unlicensed Practice of Law (Counts 44-46)</u>

¶49     Attorney Scholz's license became administratively suspended on June 5, 2019, due to his failure to comply with mandatory CLE reporting during the 2017-18 reporting period. Attorney Scholz failed to notify courts and opposing counsel of his license suspension, and his license was not reinstated from the administrative suspension until October 10, 2019. Attorney Scholz's license was again suspended on December 10, 2019, due to his noncooperation with the OLR's investigation in the present matter and was not reinstated until January 24, 2020. *See* S. Ct. Order, No. 2019XX1534-D (Dec. 12, 2019), and S. Ct. Order, No. 2019XX1534-D (Jan. 24, 2020).

¶50     Despite these periods of suspension, Attorney Scholz continued to practice law and actively represented clients in numerous circuit court proceedings, several of which are the cases underlying the other allegations of attorney misconduct in the present matter. Attorney Scholz remained counsel of record in these cases, filed documents, and failed to notify the court or opposing counsel of his license suspension. Additionally, Attorney Scholz continued to offer legal services through the DivorcePro website.

¶51     As a result of these actions, the OLR alleged that Attorney Scholz violated the following rules of professional conduct: SCR 31.10(1),[16]

---

[15] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[16] SCR 31.10(1) provides:

    If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR

enforceable via SCR 20:8.4(f),[17] by practicing law at a time when his license was administratively suspended for failure to comply with mandatory CLE reporting (Count 44); SCR 22.26(2),[18] enforceable via SCR 20:8.4(f), by practicing law when his license was suspended for willfully failing to cooperate in an ongoing OLR investigation (Count 45); and SCR 22.26(1)(c)[19] by failing to promptly provide written notice of his suspension

--------

31.03(1), or fails to pay the late fee under SCR 31.03(2), the board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the lawyer's state bar membership shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so suspended under this rule to the clerk of the supreme court, all supreme court justices, all court of appeals and circuit court judges, all circuit court commissioners appointed under SCR 75.02(1) in this state, all circuit court clerks, all juvenile court clerks, all registers in probate, the executive director of the state bar of Wisconsin, the Wisconsin State Public Defender's Office, and the clerks of the federal district courts in Wisconsin. A lawyer shall not engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule.

[17] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to . . . violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[18] SCR 22.26(2) provides, in pertinent part: "An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law . . . ."

[19] SCR 22.26(1)(c) provides:

On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following . . . Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or

to all courts and opposing counsel in all matters pending as of June 5, 2019 (Count 46).

## Failure to Cooperate (Counts 47-48)

¶52     Attorney Scholz repeatedly failed to cooperate with the OLR during its investigations into the grievances underlying thes ematters and when he did cooperate, he made numerous material misrepresentations to the OLR. As recounted earlier, this resulted in the court issuing an order to show cause why Attorney Scholz's license to practice law should not be suspended on July 26, 2018, and then temporarily suspending Attorney Scholz's license to practice law on December 10, 2019. The OLR's complaint details numerous instances in which Attorney Scholz failed to provide documents and information requested by the OLR and numerous instances in which he misrepresented his handling of client funds in the matters discussed above.

¶53     As a result of these actions, the OLR alleged that Attorney Scholz violated SCR 22.03(2) and (6), enforceable via SCR 20:8.4(h), by willfully failing to provide information and records requested during the OLR's investigation of this matter (Count 47), and SCR 22.03(6), enforceable via SCR 20:8.4(h), by making misrepresentations to the OLR regarding his handling of client funds, disputed funds, and third party funds in the cases underlying this matter (Count 48).

¶54     As to restitution, the OLR alleged that Attorney Scholz owed the following amounts to the listed individuals: (1) $4,000 to S.J.C.; (2) $2,625.39 to J.L.M.; (3) $291 to C.A-H.V.; (4) $7,000 to M.A.H.; (5) $29,315.97 to the Estate of R.G.M.; and (6) $40,000 to L.M.—totaling $83,232.36.

¶55     Based on the above allegations, the referee recommended that the court find that Attorney Scholz violated the Rules of Professional Responsibility as alleged in the complaint, with two exceptions. First, the referee concluded that as to Count 11, the partial marital settlement agreement referenced at paragraph 95 of the complaint "did not contain false information" because while it "may implicitly have represented that

_____

revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

Attorney Scholz was at that time holding funds in trust as required . . . that violation essentially duplicates the violation described in [paragraph 108 of the complaint]" as to Count 13. Second, as to Count 25 of the complaint, the referee concluded that the allegations in paragraphs 145, 182, 186, and 200 of the complaint "do *not* support by clear, satisfactory, and convincing evidence . . . that Attorney Scholz violated SCR 20:8.4(c) by causing a document containing false information regarding the J.L.M. and S.H.M. funds to be filed with the Ozaukee County Circuit Court." The referee explained that he could not conclude that the referenced documents "contained false information, as opposed to requirements of Attorney Scholz that he had already or subsequently failed to perform." The referee further explained that those documents "may implicitly have represented that Attorney Scholz was at those times holding the funds in trust or that he had applied them as required, and thereby arguably have violated the rule[.]" Nonetheless, the referee concluded "that the appropriate charge corresponding to that conduct is failure to comply with a court order in violation of SCR 20:3.3(a)(l)."

¶56    As to the appropriate sanction for the above misconduct, the referee recommended that the court accept the parties' stipulation and revoke Attorney Scholz's license to practice law in Wisconsin based on Section 4.11 of the ABA Standards for Imposing Lawyer Discipline, as well as several prior disciplinary cases from this court concluding that revocation is the appropriate sanction where an attorney knowingly converted client trust funds. The referee  further indicated that this case did not involve any mitigating factors, including that there was no indication that Attorney Scholz had repaid any of the sums for which the OLR sought restitution.

¶57    While the referee noted that the amounts involved in the present case may be less than some of the other cases where an attorney's license was revoked for prolonged trust fund violations and conversion of client funds, he stated "that is a distinction without a difference," particularly in light of the 41 counts of misconduct spanning 19 different client matters added to the other counts of misconduct for unauthorized practice of law, misrepresentations to the OLR, failure to cooperate, and a prior disciplinary history involving similar misconduct. The referee remarked that Attorney Scholz's conduct with respect to the client matters at issue represented a "business model" of "robbing Peter to pay Paul" and that Attorney Scholz treated his clients' monies as a "slush fund" to pay off other clients, unrelated business expenses, or for personal gain. Taken

together, the referee believed that Attorney Scholz's conduct was "of sufficient scale not only to merit revocation but also to exclude from consideration any lesser sanction[.]" Revocation, said the referee, "is the result most consistent with the case law" and "is necessary to fulfill at least two of the four primary goals of attorney discipline: to address the seriousness of the misconduct, and to deter other attorneys from engaging in similar misconduct."

¶58      Next, the referee addressed the issue of whether revocation should be made retroactive to the end of Attorney Scholz's 2017 suspension. The referee noted that pursuant to *In re Disciplinary Proceedings Against Woods*, 2011 WI 46, ¶¶1-2, 334 Wis. 2d 324, 800 N.W.2d 875, "[t]he Court views retroactive revocation or suspension as the exception rather than the rule and as a form of leniency." The referee then discussed several other disciplinary cases involving requests for retroactive sanctions, some of which seemed to have reached incongruent results. Attempting to synthesize these cases, the referee summarized them as standing for the following rule: "a substantial overlap in the time periods of misconduct in sequential disciplinary cases is in itself insufficient to justify a retroactive suspension or revocation." Instead, "[t]he referee must balance the aggravating and mitigating factors pertaining to the misconduct in the second case and on that basis recommend whether the case calls for the leniency that retroactivity constitutes." Applying this standard, the referee believed that there were no mitigating factors present in this case (including the lack of repayment of the converted funds) that would warrant retroactivity and thus recommended that the court deny Attorney Scholz's request for leniency and retroactive revocation.

¶59      Finally, the referee addressed restitution and the imposition of costs. The referee criticized the parties "eleventh-hour resolution of the bulk of the restitution claims." The referee noted statements in Attorney Scholz's brief and Investigator Kokie's affidavit that indicated that some of the individuals for whom the OLR sought restitution had apparently waived their right to restitution (including one individual who waived $40,000 in claimed restitution). Additionally, the OLR apparently determined that "no restitution was owed" to other individuals, and that another former client had passed away. The referee characterized these representations as "unsettling, particularly in light of their timing" and said that waiver of the $40,000 restitution claim was "implausible." Nonetheless, the referee recommended "that, in accordance with OLR's request, this court order Attorney Scholz to pay restitution in the amount of $4,000.00 to

S.J.C." The referee also recommended that Attorney Scholz be required to pay the full costs of the proceeding because there were no extraordinary circumstances present that would justify departing from the court's standard practice of imposing full costs on the respondent attorney.

¶60    Two months later, the referee issued a supplemental report regarding restitution based on an unfiled second affidavit from OLR Investigator Kokie. The referee indicated that this unfiled affidavit "clarifies the reasons why OLR, which initially sought restitution of more than $83,000, does not now seek restitution beyond the $4,000 owed to client S.J.C." The referee indicated that the OLR now believed that Attorney Scholz "has paid client M.H. $7,000, the amount OLR had sought in restitution on behalf of that client." Also, the referee noted that the second Kokie affidavit "stated that based on additional information received from Attorney Scholz and the personal representative of the Estate of R.G.M., OLR determined it could not carry its burden to prove a reasonably ascertainable amount of restitution due that Estate." Therefore, the referee "clarified" his initial report by recommending that "restitution [be] limited to . . . the amount of $4,000.00 to client S.J.C." because the "OLR does not claim and the record does not establish a factual basis for any other restitution." The supplemental report also indicated the referee's belief that there were no misrepresentations made by Attorney Scholz to the OLR when the OLR resolved the remaining restitution issues. Finally, the referee indicated: "I do not believe there is a need for further factual findings or remand on the issue of restitution."

¶61    Due to the lack of any formal document in the record evidencing the parties' resolution of the restitution issues, as well as the reference to a second unfiled affidavit from OLR Investigator Kokie in the referee's supplemental report, this court ordered the parties to file the second Kokie affidavit as well as any previous stipulation as to restitution, and, if not reflected in those documents, a document explaining how the restitution issues were resolved on a client-by-client basis. Thereafter, the OLR filed the second Kokie affidavit and submitted an additional stipulation from the parties that addressed the restitution issues in further detail.

## Analysis

¶62    No appeal was filed, so we review this matter pursuant to SCR 22.17(2). We will affirm the referee's findings of fact unless they are

clearly erroneous. *In re Disciplinary Proceedings Against Alfredson*, 2019 WI 17, ¶27, 385 Wis. 2d 565, 923 N.W.2d 869. We review conclusions of law de novo. *Id.* The court may impose whatever sanction it deems appropriate, regardless of the referee's recommendation. *Id.*

¶63    Here, the referee adopted the allegations in the complaint, based on the two partial stipulations in which Attorney Scholz withdrew his answer to the complaint. We agree that just as an attorney's failure to answer constitutes an admission of the allegations in the complaint, so too does a stipulation under which an attorney withdraws his answer. *See In re Disciplinary Proceedings Against Runyon*, 2020 WI 74, ¶12, 393 Wis. 2d 612, 948 N.W.2d 62 (holding that "the factual allegations of the OLR's complaint may be taken as true" when they were "deemed admitted by Attorney Runyon's failure to answer").

¶64    When an attorney admits the allegations in the complaint, that normally constitutes clear, satisfactory, and convincing evidence that the attorney committed all of the counts of misconduct alleged in the complaint. *Id.* Here, the referee recommended concluding that the allegations in the complaint provided clear, satisfactory, and convincing evidence that Attorney Scholz committed all counts of misconduct alleged, except two—Counts 11 and 25. We disagree with the referee and hold that the allegations in the complaint provided clear, satisfactory, and evidence that Attorney Scholz committed all counts of misconduct alleged. We do so because the referee's recommendation as to Counts 11 and 25 was based on an erroneous view of the law.

¶65    Count 11 alleged that Attorney Scholz violated SCR 20:8.4(c) (misrepresentation) by filing a partial marital settlement agreement in the P.S.N. matter that required him to hold certain funds in trust, when he had already converted those funds. The referee reasoned that the referenced document "did not contain false information" and that this count was duplicative of Count 13, which alleged that Attorney Scholz violated SCR 20:3.3(a)(1) by "misrepresenting to the Washington County Circuit Court that he was holding the [P.S.N.] funds in trust when he was not."

¶66    We disagree with the referee for two reasons. First, the referee conceded that the partial marital settlement agreement "may implicitly have represented that Attorney Scholz was at that time holding the funds in trust as required, and thereby arguably have violated the rule[.]" But there is nothing *arguable* or *implicit* about it. Attorney Scholz signed and

filed an agreement representing that he was holding certain funds in trust when he had already converted those funds several weeks prior. Second, the referee seemingly did not recognize that Counts 11 and 13 related to two different instances of Attorney Scholz misrepresenting the status of the funds to the circuit court. Paragraph 106 of the complaint (the basis for Count 11) pertains to the misrepresentation contained in the partial settlement agreement in which Attorney Scholz represented that he was holding the proceeds from the sale of the marital home in trust when he had already converted these funds. Paragraphs 101 and 108 of the complaint (the basis for Count 13) involve Attorney Scholz making the same misrepresentation in open court when questioning the parties as to the terms of the partial settlement agreement. Contrary to what the referee recommended, Counts 11 and 13 are not duplicative because they allege separate instances in which Attorney Scholz made the same misrepresentation to the circuit court (one in writing and one orally). Therefore, we hold that the allegations in the complaint provided clear, satisfactory, and convincing evidence that Attorney Scholz violated SCR 20:3.3(a)(1) by "misrepresenting to the Washington County Circuit Court that he was holding the [P.S.N.] funds in trust when he was not," as alleged in Count 11.

¶67    Similarly Count 25 of the complaint alleged that Attorney Scholz violated SCR 20:8.4(c) by causing a document containing false information regarding the J.L.M. and S.H.M. funds to be filed with the Ozaukee County Circuit Court. The referee again stated that while these documents "may implicitly have represented that Attorney Scholz was at those times holding the funds in trust or that he had applied them as required, and thereby arguably have violated the rule," in his view, these documents did not contain "false information, as opposed to requirements of Attorney Scholz that he had already or subsequently failed to perform." The referee also commented that a more appropriate charge would have been a violation of SCR 20:3.3(a)(1) for failing to comply with a court order.

¶68    Again, we disagree with the referee. Paragraphs 145-47, 182, 186, and 200 of the complaint allege that Attorney Scholz filed various stipulations, a partial settlement agreement, and final settlement agreement relating to S.H.M.'s divorce that required Attorney Scholz to hold the proceeds from the sale of the marital residence in trust and to disburse the funds in an identified manner. That initial stipulation was incorporated into the later documents. Attorney Scholz did not do so and converted those funds to make payments to other clients. In fact, he did so four days after

the initial stipulation and order was signed. Attorney Scholz also failed to advise the court and the parties that he received additional tax escrow funds related to the sale of the marital residence, which sums would have been included in the partial and final settlement agreement and been subject to the terms of distribution of each. In short, the complaint alleges that Attorney Scholz made various misrepresentations by omission in these documents.

¶69    The referee seemed to believe that misrepresentations by omission or "implicit" misrepresentations are not necessarily covered by SCR 20:8.4(c), stating that these "arguably" violate the rule. But prior disciplinary decisions clearly establish that "deceitful omissions of relevant information constitute dishonest conduct within the scope of SCR 20:8.4(c)." *In re Disciplinary Proceedings Against Knickmeier*, 2004 WI 115, ¶93, 275 Wis. 2d 69, 683 N.W.2d 445 (citing *In re Disciplinary Proceedings Against Urban*, 2002 WI 63, 253 Wis. 2d 194, 645 N.W.2d 612). Also, the fact that the identified conduct may have violated a different rule of professional misconduct is no reason for concluding that Attorney Scholz did not violate SCR 20:8.4(c). Therefore, we hold that the complaint provided clear, satisfactory, and convicting evidence that Attorney Scholz committed the misconduct alleged in Count 25 of the complaint.

¶70    Regarding discipline, we accept the referee's recommendation to adopt the parties' stipulation that Attorney Scholz's license to practice law in Wisconsin should be revoked. Section 4.11 of the ABA Standards for Imposing Lawyer Discipline recognizes the "general rule . . . that disbarment is appropriate when an attorney knowingly converts client property and causes injury to a client." *In re Disciplinary Proceedings Against Constant*, 2022 WI 78, ¶31, 405 Wis. 2d 48, 982 N.W.2d 86.[20] Our cases likewise recognize that revocation is the appropriate remedy where an attorney knowingly converts client trust funds. *See, e.g., In re Disciplinary Proceedings Against O'Byrne*, 2002 WI 123, ¶19, 257 Wis. 2d 8, 653 N.W.2d 111; *In re Disciplinary Proceedings Against Hinnawi*, 202 Wis. 2d 113, 120-122, 549 N.W.2d 245 (1996); *In re Disciplinary Proceeding Against Wright*, 180 Wis. 2d 492, 493-94, 509 N.W.2d 290 (1994).

─────────────────────

[20] The ABA Standards use the term "disbarment"; Wisconsin uses the term "revocation." *See* SCR 21.16(1m)(a).

¶71    Additionally, this case involves multiple aggravating factors, including: prior disciplinary offenses of a similar nature; dishonest/selfish motive; a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary process; submission of false statements during the disciplinary process; substantial experience in the practice of law; and apparent indifference to making restitution. *See ABA Standards for Imposing Lawyer Discipline*, § 9.22(a)-(f), (i)-(j) (2005). While the OLR has now reported that that Attorney Scholz repaid one former client, M.A.H., $7,000, there is no indication that he has repaid the $4,000 that he has conceded is owed to S.J.C. Moreover, repaying a relatively small amount of restitution pales in comparison to the scope, frequency, and nature of the misconduct involved in this case. And the fact that after years of not cooperating with the OLR's investigation and litigating this matter, Attorney Scholz eventually admitted to the underlying allegations in the complaint and took accountability for his actions at the 11th hour is not a significant mitigating factor. *See ABA Standards for Imposing Lawyer Discipline*, § 9.32 (2005). No other mitigating factors are present.

¶72    We agree with the referee's assessment that Attorney Scholz's misconduct here is comparable to that in *In re Disciplinary Proceedings Against Menard*, 2020 WI 50, 391 Wis. 2d 747, 943 N.W.2d 549 and *In re Disciplinary Proceedings Against Weigel*, 2012 WI 124, 345 Wis. 2d 7, 823 N.W.2d 798. In all three cases, "over an extended period of time, client trust funds were used as slush funds to pay off other clients, firm expenses, or whatever was most pressing at the moment," and the attorney made a business practice of "robbing Peter to pay Paul." *Menard*, 391 Wis. 2d 747, ¶¶66-67.

¶73    While the amounts involved in the present case may be less than some of our other cases where an attorney's license was revoked for prolonged trust fund violations and conversion of client funds, this, as the referee remarked, "is a distinction without a difference," particularly in light of the nature and scope of the misconduct in this case, including the counts of misconduct for unauthorized practice of law, misrepresentations to OLR, failure to cooperate, and a prior disciplinary history involving similar misconduct. We agree with the referee that revocation "is the result most consistent with the case law" and "is necessary to fulfill at least two of the four primary goals of attorney discipline: to address the seriousness of the misconduct, and to deter other attorneys from engaging in similar misconduct." Put simply, Attorney Scholz regularly stole from and lied to clients and failed to safeguard trust funds, lied to the courts before which

he practiced, and failed to cooperate with and lied to the OLR throughout this case. His conduct is beyond reprehensible. We agree with the referee that that the nature and scope of misconduct involved in this case is "of sufficient scale not only to merit revocation but also to exclude from consideration any lesser sanction." *See Weigel*, 345 Wis. 2d at 39 ("Revocation . . . is the only sanction proportionate to the seriousness of the misconduct, and revocation will also protect the public, the courts, and the legal system, and it will deter other lawyers from engaging in similar misconduct.").

¶74    The next issue we must address is the referee's recommendation to deny Attorney Scholz's request to make his revocation retroactive to the end of his 2017 suspension. "Generally, a retroactive [sanction] is disfavored in the absence of some compelling circumstance." *In re Disciplinary Proceedings Against Woods*, 2011 WI 46, ¶2, 334 Wis. 2d 324, 800 N.W.2d 875 (citing *In re Disciplinary Proceedings Against Boyd*, 2009 WI 59, 318 Wis. 2d 281, 767 N.W.2d 226).

¶75    Before the referee, Attorney Scholz argued that retroactive revocation was appropriate under *In re Disciplinary Proceedings Against Cooper*, 2013 WI 55, 348 Wis. 2d 266, 833 N.W.2d 88, and *In re Disciplinary Proceedings Against Mandelman* (*Mandelman V*), 2014 WI 100, 358 Wis. 2d 179, 851 N.W.2d 401, because there was a substantial overlap between the timing of the misconduct in this case and his conduct in *Scholz I*. The referee was of the view that *Cooper* and *Mandelman V* were outliers and inconsistent with other cases such as *Woods*, 334 Wis. 2d 324, *In re Disciplinary Proceedings Against Jelinske*, 2018 WI 94, 383 Wis. 2d 604, 917 N.W.2d 542, and *In re Disciplinary Proceedings Against Mandelman* (*Mandelman IV*), 2009 WI 40, 317 Wis. 2d 215, 765 N. W.2d 788. We briefly discuss these cases in order to provide guidance on this topic to future litigants.

¶76    The court in *Cooper* justified a two-year suspension retroactive to the end of a prior three year suspension (for which the attorney did not seek reinstatement), reasoning that a retroactive suspension "may be appropriate in situations, like the one here, where the 'misconduct occurred prior to the [earlier] disciplinary proceeding and [the attorney's] license has remained suspended well beyond the period of suspension previously imposed.'" *Cooper*, 348 Wis. 2d 266, ¶25 (citation omitted). Likewise, in *Mandelman V*, this court accepted the referee's recommendation that revocation be made retroactive to the *start* date of a prior one-year suspension, reasoning that the period of misconduct overlapped similar

misconduct that was the subject of a prior disciplinary proceeding and that the attorney's license had remained suspended "well past" the initial one-year suspension ordered in the prior case. The court agreed that "under these circumstances the period of revocation should run concurrently with the [prior] one-year suspension." *Mandelman V*, 358 Wis. 2d 179, ¶45.

¶77     In contrast, in *Woods*, 334 Wis. 2d 324, we declined to apply a six-month suspension retroactively, notwithstanding the fact that the attorney's license had been under a continuous suspension, explaining: "Generally, a retroactive suspension is disfavored in the absence of some compelling circumstance. . . . We discern no compelling circumstance to impose a retroactive suspension in this instance." *Id.*, ¶2. This court further explained that a retroactive sanction was not appropriate in light of "Attorney Woods' extensive disciplinary history" and because a retroactive sanction "would not serve the objectives of lawyer discipline, which include the important goal of deterrence." *Id.*, ¶20.

¶78     Likewise, in *Jelinske*, 383 Wis. 2d 604, this court refused to apply an 18-month suspension retroactive to the date the attorney resigned from his law firm following a previous disciplinary sanction. We reasoned that a retroactive suspension may be appropriate if there is a "compelling circumstance that mitigates the severity of the discipline required[,]" such as where "the misconduct arises out of the same set of circumstances that prompted an earlier suspension[.]" *Id.*, ¶31. However, we indicated that a retroactive sanction is not proper where an attorney continues his misconduct and stops "only after having drawn the ire" of the court, particularly where a retroactive suspension would permit the attorney to petition for reinstatement shortly after discipline is imposed in the second case. *Id.*

¶79     And in *Mandelman IV*, 317 Wis. 2d 215, this court rejected the parties' stipulation and referee's recommendation that a one-year suspension should be made retroactive to the date that the attorney would have been eligible for reinstatement from a previous one-year suspension, based on the attorney having accepted responsibility for his conduct. We explained that "the mitigating effect of his acceptance of responsibility must be viewed in relation to his extensive disciplinary history, along with the number of counts and the nature of his misconduct." *Id.*, ¶27. We concluded: "In view of these significantly aggravating factors, we conclude that a retroactive suspension fails to achieve the goals of legal discipline." *Id.*

¶80    The referee was correct in synthesizing these cases as standing for the following proposition: "[A] substantial overlap in the time periods of misconduct in sequential disciplinary cases is in itself insufficient to justify a retroactive suspension or revocation." Instead, the court "must balance the aggravating and mitigating factors pertaining to the misconduct in the second case" and determine "whether the case calls for the leniency that retroactivity constitutes."

¶81    Here, we have already discussed the serious nature of Attorney Scholz's misconduct and the presence of several aggravating factors and no significant mitigating factors. We agree with the referee that the record does not provide any basis for leniency in this case. Additionally, we note that while the underlying counts of misconduct relating to trust fund violations and conversion of client trust funds may overlap with the single count of misconduct in *Scholz I*, the severity and extent of the misconduct in *Scholz I* pales in comparison to the multiple counts at issue here. Additionally, the allegations relating to failure to cooperate with the OLR and the multiple misrepresentations made by Attorney Scholz to the OLR during its investigation post-date the conduct at issue in *Scholz I*. And this case also involves Attorney Scholz practicing law while his license was suspended and failing to advise courts of his suspension—conduct that also postdated the conduct at issue in *Scholz I*. Therefore, we agree with the referee's recommendation to deny Attorney Scholz's request for retroactive revocation, as the balance of aggravating and mitigating factors do not provide any justification for leniency in this case.

¶82    We now turn to the issue of restitution. We begin with the overarching observation that neither the parties nor the referee handled the restitution issues in this case in an orderly and proper manner. To recap, the OLR initially sought restitution in the amount of $83,232.36, broken down as follows: $4,000 to S.J.C.; $2,625.39 to J.L.M.; $291 to C.A-H.V.; $7,000 to M.A.H.; $29,315.97 to the estate of R.G.M.; and $40,000 to L.M.

¶83    Under the parties' second partial stipulation, Attorney Scholz agreed that he owed $4,000 in restitution to S.J.C. but continued to dispute the remaining items of restitution. The referee's report indicates that "on January 22, 2024, the parties resolved the remaining restitution issues." However, the parties did not file any formal document evidencing a further stipulation as to how the restitution issues were resolved at that time. Instead, Attorney Scholz made several representations concerning the restitution issues in his brief supporting his motion for retroactive

revocation that do not appear substantiated in the record before the referee at that time. For its part, the OLR filed the first Kokie affidavit as part of its brief opposing retroactive revocation. That affidavit indicated that prior to January 2024, none of the individuals to whom the OLR had requested restitution be paid had made a knowing and informed waiver of restitution; nor had they provided any information showing that restitution was not owed. However, shortly before the restitution hearing was scheduled, Attorney Scholz provided a letter from L.M., who stated that she "did not question the services" provided by Attorney Scholz and "did not have a grievance against him." Attorney Scholz provided a similar letter from the personal representative of the estate of R.G.M. The OLR concluded that neither letter demonstrated that the individual in question had an accurate understanding of how Attorney Scholz handled the funds in question or understood that they might be owed restitution. Attorney Scholz subsequently provided an additional letter from L.M. indicating that she was waiving "any potential restitution that she might be owed" and "would not discuss any further with OLR her legal matter or how it was handled." Investigator Kokie's affidavit then indicated that "[b]etween January 11 and 22, 2024 [C.A-H.V., K.C., L.M., and M.A.H.] contacted me and either made a knowing and informed waiver of restitution or provided information that allowed OLR to determine that no restitution was owed." No further information was provided about what specifically those individuals communicated to the OLR or how the OLR determined that said individual made a knowing and informed waiver of restitution.

¶84    Despite questioning the propriety of the last-minute waivers, the referee's report simply recommended that the court adopt "OLR's request" and order Attorney Scholz to pay restitution in the amount of $4,000 to S.J.C. without any further analysis. Then, based on the (as of then unfiled) second affidavit from Investigator Kokie, the referee's supplemental report indicated the referee's belief that the record did not support any claim of restitution beyond the $4,000 that the parties stipulated was owed to S.L.C.

¶85    Investigator Kokie's second affidavit indicates that on January 11, 2024, she spoke with C.A-H.V. and explained that the OLR believed he was owed $291 in restitution. "After discussion, [C.A-H.V.] stated he wanted to waive restitution. OLR therefore withdrew its restitution request regarding [C.A-H.V.]" As to the estate of R.G.M., which the OLR believed was owed $29,315.97 in restitution, Investigator Kokie explained that between January 17 and 24, 2024, she spoke with the

personal representative of the estate and "received additional information." The OLR did not further elucidate as to the exact nature of this "additional information." Nonetheless, the OLR "determined that it could not carry its burden to prove a reasonably ascertainable amount of restitution due the Estate. OLR therefore withdrew its restitution request regarding the [estate of R.G.M.]" Investigator Kokie also averred that she spoke with L.M. on January 18, 2024, and explained that the OLR believed that Attorney Scholz owed her $40,000 in restitution. L.M. indicated that the estate matter "worked out just fine." Investigator Kokie explained that L.M. "could chose to waive restitution" and L.M. responded, "Sure." The OLR "therefore withdrew its restitution request regarding [L.M.]." As to M.A.H., Investigator Kokie averred that "[M.A.H.] received $7,000 in cash from Scholz" and that the OLR "therefore withdrew its restitution request." Finally, as to the $2,625.39 that the OLR believed was owed to J.L.M., Investigator Kokie indicated that on January 22, 2024, the OLR learned that J.L.M. had passed away; as a result, the OLR "determined it appropriate to forgo seeking restitution[.]"

¶86    Following this court's order to supplement the record concerning restitution, the parties filed a third stipulation. That stipulation indicates that Attorney Scholz "acknowledges he kept incomplete and inaccurate records, which has made it difficult to reconstruct what happened and determine when and whether certain funds were repaid, other than as expressly provided for below." The parties further reiterate their agreement that Attorney Scholz should be assessed only $4,000 in restitution owed to S.J.C. The stipulation then provides a further explanation of why the OLR chose to withdraw its request for restitution for the other individuals named in the complaint.

¶87    As to J.L.M., the parties explain that at the time of her death, she was subject to a guardianship and special needs trust and receiving social security benefits. Because no probate was opened, the OLR could not be certain of J.L.M.'s heirs, or whether J.L.M. had creditors who may have been owned the $2,625.39. Also, the OLR was not sure if some of the claimed outstanding amount had been retained by J.L.M.'s former spouse whom Attorney Scholz had represented in the couple's divorce proceeding. "Given these facts, OLR determined that it would be inappropriate to seek restitution. Accordingly OLR withdrew its restitution claim regarding [J.L.M]."

¶88    Regarding C.A-H.V., the parties stipulate that "[d]uring a January 11, 2024 phone call with OLR lead investigative counsel Emily Kokie, [C.A.-H.V.] knowingly, intelligently, and voluntarily waived his right to restitution from Scholz." No further explanation is provided as to how the OLR made this determination.

¶89    As to M.A.H., the parties stipulate that Attorney Scholz repaid the $7,000 that the OLR alleged was owed in restitution, in cash, and attached a "receipt" from M.A.H. acknowledging as such, but without indicating the date of payment. The parties agree: "To the extent that Attorney Scholz converted funds related to [M.A.H.], they have been repaid."

¶90    Regarding the estate of R.G.M., the parties explain that the information presented in the second Kokie affidavit is correct and that during the litigation, the OLR received additional information from Attorney Scholz and the personal representative of the estate that "reduced the amount of funds that were not accounted for." The OLR therefore "determined that it would be difficult to determine or to meet its burden to show what amount might be owed to the Estate" or its heirs or potential creditors without reopening the probate matter. After communicating these concerns to the personal representative, the OLR withdrew its request for restitution

¶91    Finally, as to L.M., the parties simply reiterate the contents of the second Kokie affidavit: "During a January 18, 2024 telephone call with Emily Kokie, [L.M.] knowingly, intelligently, and voluntarily waived her right to restitution from Scholz." No further explanation is provided.

¶92    The court has several concerns with how restitution was handled in this case. As noted, the parties did not file a formal stipulation with the referee explaining how these items of restitution were resolved. The first affidavit from Investigator Kokie contains only a partial explanation as to why the OLR withdrew its claims of restitution. While the second affidavit from Investigator Kokie and the stipulation that eventually was filed with this court contain additional information, the parties are still short on details as to what specific information was conveyed to the individuals who apparently waived their right to restitution or why the OLR decided to accept the waivers. Simply reporting that the OLR asked a person if she wanted to waive restitution and that she responded "sure" is not sufficient—particularly when the amount of restitution at issue is

$40,000. In the future, when the OLR intends to accept such a waiver, it should provide the referee and this court with specific facts demonstrating that the OLR communicated the amount of restitution that it believes is owed, the basis for the OLR's calculation, an explanation of why the individual chose to waive restitution, and an explanation of why the OLR chose to accept the waiver.

¶93    However, there is a more fundamental problem with the way the OLR handled the restitution claims in this case. The OLR seemed to believe that because Attorney Scholz did not keep accurate and up-to-date financial records of the funds at issue, it was appropriate for the OLR to abandon restitution claims that it believed were not "reasonably ascertainable." This "throw up your hands" policy is how the OLR generally handled restitution claims prior to 2019. However, on October 10, 2019, then-Chief Justice Patience Roggensack sent a letter to the OLR's Board of Administrative Oversight (BAO), asking it to evaluate whether the OLR should continue its policy of declining to seek restitution when the record does not demonstrate a reasonably ascertainable amount. She asked: "Is this appropriate when the respondent attorney's conduct may be the reason an amount cannot be ascertained . . . . Who should carry the burden to show a 'reasonably ascertainable' amount when the amount of restitution is in dispute?" The BAO issued a response report on January 16, 2020. It concluded that in such circumstances, the burden should be squarely on the attorney who engaged in the misconduct and that "that OLR's restitution policy should reflect the approach employed in the 2017 *Muwonge* and *Ruppeldt* cases, wherein the Court . . . shifted the burden unto the attorney in establishing what offset, if any, is appropriate in determining the amount of damages the grievant or OLR has claimed is at issue . . . ."

¶94    This court subsequently adopted the BAO's recommended policy change for the OLR when seeking restitution. For instance, in *In re Disciplinary Proceedings Against White*, this court rejected a restitution statement from the OLR that recommended that Attorney White be ordered to pay restitution to some, but not all, of the clients whose funds had been converted. *See* S. Ct. Order No. 2019AP1162-D (Sept. 17, 2020). We recognized the BOA's recommended change in the OLR's restitution policy and ordered the parties to show cause why Attorney White should not be made to pay restitution to all affected clients. *Id.* Likewise, in *In re Disciplinary Proceedings Against Harris*, 2021 WI 31, ¶38 n.5., 396 Wis. 2d 374, 956 N.W.2d 891, this court reminded the OLR of the policy shift in restitution as outlined in the BAO report when the OLR's restitution

statement contained verbiage consistent with its former restitution policy. We indicated: "[T]he BAO recommended that the OLR's restitution policy shift the burden onto the attorney to establish what offset, if any, is appropriate in determining the amount of restitution." *Id.*

¶95    We again remind the OLR that when, due to poor recordkeeping or other conduct by an attorney, the OLR is unable to discern a reasonably ascertainable amount of restitution owed, the burden shifts to the attorney to establish what offset, if any, is appropriate in determining the amount of restitution owed to a particular individual. This policy change should be reflected not only in the OLR's restitution statements to this court, but also in the OLR's decision making when entering into stipulations for a lesser amount of restitution than OLR originally alleged was owed by an attorney.

¶96    With that said, this court reluctantly agrees to accept the parties' stipulation and the referee's recommendation that Attorney Scholz be ordered to pay $4,000 in restitution to S.L.C. The record before the court simply does not support ordering any additional amount of restitution to any other individual.

¶97    Finally, we address the issue of costs. The referee recommended that Attorney Scholz pay the full costs of this proceeding. The total costs of this matter reported by the OLR are $10,905.68 as of May 31, 2024. Attorney Scholz did not object to any of the stated costs. There are no extraordinary circumstances present that would justify departing from the court's standard practice of imposing full costs on the respondent attorney. *See In re Disciplinary Proceedings Against Lister*, 2015 WI 8, ¶47, 360 Wis. 2d 330, 858 N.W.2d 687.

¶98    IT IS ORDERED that the license of Carl Robert Scholz is revoked, effective the date of this order.

¶99    IT IS FURTHER ORDERED that within 60 days of the date of this order, Carl Robert Scholz shall pay the sum of $4,000 to S.L.C.

¶100   IT IS FURTHER ORDERED that within 60 days of the date of this order, Carl Robert Scholz shall pay to the Office of Lawyer Regulation, the costs of this proceeding, which are $10,905.68 as of May 31, 2024.

¶101   IT IS FURTHER ORDERED that Carl Robert Scholz shall pay restitution to S.L.C. as set forth above before paying the costs of this proceeding.

¶102   IT IS FURTHER ORDERED that Carl Robert Scholz shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶103   IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.28(3).

ANNETTE KINGSLAND ZIEGLER, C.J., with whom REBECCA GRASSL BRADLEY, HAGEDORN, and KAROFSKY, JJ., join, concurring.

¶104  I concur in the court's order revoking Attorney Scholz's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. *See* SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. *See In re Disciplinary Proceedings Against Moodie*, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, *In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings*, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. *See* S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶105  For the foregoing reason, I concur.

1